# IN THE COURT OF APPEALS OF IOWA

No. 17-1021
Filed July 18, 2018

**SIBLEY STATE BANK,**
Plaintiff-Appellee,

**vs.**

**DALE W. BRAAKSMA, DANNA S. BRAAKSMA, JESSE DALE BRAAKSMA, and BRAAKSMA GRAIN FARMS, INC.,**
Defendants-Appellants.

_____

Appeal from the Iowa District Court for Osceola County, Patrick M. Carr, Judge.

Farm debtors appeal the district court's appointment of the bank as a receiver, the denial of a continuance, and the grant of summary judgment to the bank in a foreclosure action. **AFFIRMED.**

Curt Krull of Waagmeester Law Office, P.L.C., Rock Rapids, for appellants.

Daniel E. DeKoter of DeKoter, Thole, Dawson & Rockman, P.L.C., Sibley, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ. Carr, S.J., takes no part.

**TABOR, Judge.**

For more than a decade, Sibley State Bank loaned money to Dale and Danna Braaksma, their son Jesse, and Braaksma Grain Farms, Inc. (collectively the Braaksmas) and secured mortgages on their farmland as collateral. This appeal involves the bank's foreclosure action commenced in 2016. The Braaksmas take issue with three district court rulings: (1) appointment of the bank as a receiver under Iowa Code section 680.1 (2017); (2) denial of their motion to continue under Iowa Code section 645.15; and (3) grant of the bank's motion for summary judgment on the foreclosure. Finding the district court acted properly in all three respects, we affirm.

## I.     Facts and Prior Proceedings

At the time, the Braaksmas owned about 800 acres of farmland in Osceola County. Dale and Danna filed articles of incorporation creating Braaksma Grain Farms, Inc. in 2000. Dale is corporate president and Danna is the treasurer and secretary. Their son, Jesse plays an active role in the family's farming operations.

From 2004 to 2014, Sibley State Bank loaned the Braakmas money through six promissory notes. Dale and Danna signed two of the six promissory notes, Jesse signed three of the promissory notes, and Braaksma Grain Farms signed one. The Braaksmas' notes and obligations were secured by real estate mortgages encumbering more than half of their total acres of land.[1]

---

[1] The record shows a series of three unconditional guaranties of the bank obligations: the first executed by Dale and Danna in January 2004, holding them liable for all of Jesse's obligations; the second executed by Braaksma Grain Farms' in October 2013, holding the corporation liable for all of Dale and Danna's obligations; and the third executed by Dale and Danna in May 2014 for Braaksma Farm's obligations to the bank.

In early 2016, the Braaksmas missed payments on their promissory notes. By July 15, 2016, all the notes were in default. The Braaksmas owed the bank in excess $1.5 million. The bank sent the Braaksmas notice of right to cure the default, but forty-five days elapsed without payment. The parties participated in mediation as required by Iowa Code section 654.2C[2] but did not come to an agreement. The bank requested a mediation release in August. In September, the bank's attorney sent a "demand for payment of the accelerated balances of the promissory notes" in accord with a clause in the promissory notes and Iowa Code section 654.4B.[3] In October, the bank proceeded with a foreclosure action.[4]

In February 2017, the bank asked to be appointed as the receiver under the terms of the Braaksmas' mortgages. The application asserted, "The property

---

[2] This section provides:

> A person shall not initiate a proceeding under this chapter to foreclose a deed of trust or mortgage on agricultural property, as defined in section 654A.1, which is subject to chapter 654A and which is subject to a debt of twenty thousand dollars or more under the deed of trust or mortgage unless the person receives a mediation release under section 654A.11, or unless the court determines after notice and hearing that the time delay required for the mediation would cause the person to suffer irreparable harm. Title to land that is agricultural property is not affected by the failure of any creditor to receive a mediation release, regardless of its validity.

Iowa Code § 654.2C.

[3] This section provides:

> Prior to commencing a foreclosure on the accelerated balance of a mortgage loan and after termination of any applicable cure period, including but not limited to those provided in section 654.2A or 654.2D, a creditor shall give the borrower a fourteen-day demand for payment of the accelerated balance to qualify for an award of attorney fees under section 625.25 on the accelerated balance.

Iowa Code § 654.4B(1).

[4] The bank also brought a replevin action against the Braaksmas. Because Iowa Code section 643.2 prohibits joinder of any action with a replevin proceeding, the district court addressed the replevin filing in a separate case. *See Sibley State Bank v. Braaksma*, No. 17-1002, also filed today.

subject to the mortgages is tillable farmland. Historically, the [Braaksmas] have very poor farm practices, which have deteriorated the condition of the farmland and resulted in yields well below local production averages." The Braaksmas contested the appointment of the bank as receiver. Bank president Karl Bormann testified the Braaksmas demonstrated an "inability for timeliness, to actually get the crop in in a timely fashion, to actually care for the crop in terms of weed control, to actually fertilize the crop, and then to ultimately harvest the crop." Bormann pointed to lower yields and deterioration of the corn allowed to stand in the field. In response to Bormann, Jesse testified his family uses no-till and other sustainable farming approaches which were not common to their area of the state. He said the bank took a "dim view" of these conservation methods and wanted them to "operate like their other customers." In March 2017, the district court appointed the bank as receiver.

Also in February 2017, the bank filed a motion for summary judgment in the foreclosure action. In March, the Braaksmas filed a resistance to the bank's motion for summary judgment, as well as a motion to continue under Iowa Code section 654.15. In May, the district court denied the Braaksmas' motion to continue and granted the bank's motion for summary judgment. The district court filed the decree of foreclosure in June 2017. The Braaksma now appeal.

## II. Scope and Standards of Review

The three issues on appeal call for varying standards of review. First, we review the district court's decision to appoint the bank as receiver de novo. *See Wellman Sav. Bank v. Roth*, 432 N.W.2d 697, 699 (Iowa Ct. App. 1988). We give weight to the district court's fact findings but are not bound by them. *Id.*

Second, we review the denial of a continuance under the foreclosure moratorium statute for an abuse of discretion. *See Ronan v. Larson*, 278 N.W. 641, 642 (Iowa 1938).

Third, we review the grant of summary judgment for the correction of legal error. Iowa R. App. P. 6.907; *U.S. Bank Nat'l. Ass'n v. Lamb*, 874 N.W.2d 112, 115 (Iowa 2016). The district court properly grants summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, reveal no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law". Iowa R. Civ. P. 1.981(3); *IBP Inc. v. DCS Sanitation Mgmt. Servs., Inc.*, 498 N.W.2d 425, 426 (Iowa Ct. App. 1993). A genuine issue of material fact exists if reasonable minds could differ with respect to how the issue should be resolved. *U.S. Bank Nat'l. Ass'n v. Lamb*, 874 N.W.2d at 115. We view the record in the light most favorable to the nonmoving party. *Id.*

## III. Discussion

### A. Appointment of Receiver

A receiver is "a person appointed by the court to take into his custody the control and management of the property or funds of another, pending judicial action concerning them." *Dobler v. Bawden*, 25 N.W.2d. 866, 869–70 (Iowa 1947) (describing receiver as "an arm of the court"). On appeal, the Braaksmas contend the district court should not have appointed the bank as receiver. They first assert the mortgage did not contractually require the appointment of a receiver. The mortgage states:

> Upon a default by the Mortgagor, the lender may take possession of the property itself or through a court appointed receiver, without regard to the solvency or insolvency of the Mortgagor, the value of the property, the adequacy of the Lender's security, or the existence of any deficiency judgment, and may operate the Property and collect the rents and apply them to the costs of operating the Property and/or to the unpaid debt.

The bank interprets this clause as entitling it to appointment of a receiver. The district court disagreed, concluding it could not "infer from the language of those mortgages" that the Braaksmas were barred from resisting the appointment of a receiver. We agree with the district court; the use of the term "may" signals the Braaksmas did not consent to the appointment of a receiver. *See Norwest Bank Des Moines, Nat'l. Ass'n v. Bruett*, 432 N.W.2d 711, 712 (Iowa Ct. App. 1988) (finding mortgagor consented to appointment of a receiver based on the use of "shall" in the mortgage). Given the mortgage language, the appointment of a receiver was a decision for the district court. *See Holden v. Constr. Mach. Co.*, 202 N.W.2d 348, 360 (Iowa 1972) (describing appointment of a receiver to be "addressed to the court's sound legal discretion").

We turn from the contract terms to the statutory language. The Braaksmas acknowledge Iowa Code section 680.1 authorizes the district court to appoint a receiver where

> the party shows that [it] has a probable right to, or interest in, any property which is the subject of the controversy, and that such property, or its rents or profits, are in danger of being lost or materially injured or impaired, and on such notice to the adverse party as the court shall prescribe, the court, if satisfied that the interests of one or both parties will be thereby promoted, and the substantial rights of neither unduly infringed. . . .

Iowa Code § 680.1.

The Braaksmas do not dispute the bank's interest in the property nor do they deny receiving "notice." But they contend the bank failed to meet the remaining elements of the statute. In particular, the Braaksmas maintain insufficient evidence supports the bank's position that the property's "rents or profits" were "in danger of being lost or materially injured or impaired".

At the hearing on the bank's motion to appoint a receiver, bank president Bormann expressed concern the Braaksmas would not timely harvest their corn crop, noting Jesse's dilatory farm practices and "the inconsistency of allowing grain to stand in the field and be harvested in the spring further added to the deterioration of that collateral." The Braaksmas assert Bormann is "not a farming expert" and his testimony did not show the bank's interest in the crop yield was "in danger of being lost or materially injured" without the appointment of a receiver. They fault the district court for accepting Bormann's opinion "at face value" and allege the district court erred in appointing a receiver because the court relied on the "groundless opinions of a bank president."

The bank counters that the previous fall it was forced to hire a custom combine to harvest the Braaksmas' corn even though the family possessed machinery and could have timely harvested the crop. The bank argues the Braaksmas' "refusal to harvest the 2016 corn crop is sufficient in itself to support a finding of probable injury or impairment to the rents and profits of the land under section 680.1." We agree the district court properly appointed the bank as receiver so the bank could oversee the harvest and protect its profits in foreclosure to reduce the outstanding obligations of the Braaksmas.

In further defense of the district court's decision, the bank argues the Braaksmas cannot show their substantial rights were "unduly infringed" by the appointment of the bank as a receiver because they were granted the right of first refusal to rent the farmland in compliance with Iowa Code section 654.14.[5]  *See Fed. Land Bank of Omaha v. Heeren*, 398 N.W.2d 839, 842 (Iowa 1987) (defining preference under the facts of case as giving the debtor a right of first refusal in leasing).  The Braaksmas contend that as a practical matter the statutory preference was of little value to them after the bank took their assets in the replevin action.  They also cite to Iowa Code section 628.3, which provides for a debtor to "redeem real property at any time within one year from the day of sale" and entitles a debtor "in the meantime" to "possession thereof."  The Braaksmas argue that when read together sections 654.14 and 628.3 signal a legislative intent to give landowners "every opportunity" to continue farming until a foreclosure is final.  While those statutory provisions may signal such an intent, nothing about the appointment of a receiver in this case undermines that legislative purpose.

The appointment of the receiver offered a benefit to both the bank and the Braaksmas.  The receiver maximizes the value of the land the bank can sell which in turns decreases the Braaksmas' debt.  We conclude the appointment of the bank as receiver did not unduly infringe on the Braaksmas' rights and affirm the ruling.

---

[5] "In an action to foreclose a real estate mortgage, if a receiver is appointed to take charge of the real estate, preference shall be given to the owner or person in actual possession, subject to approval of the court, in leasing the mortgaged premises." Iowa Code § 654.14(1).

**B.    Denial of Continuance**

The Braaksmas next allege the district court abused its discretion in denying their March 2017 motion to continue under Iowa Code section 654.15.  That statute provides:

> In all actions for the foreclosure of real estate mortgages . . . when the owner enters an appearance and files an answer admitting some indebtedness and breach of the terms of the designated instrument . . . the owner may apply for a continuance of the foreclosure action if the default is mainly due or brought about by reason of drought, flood, heat, hail, storm, or other climatic conditions . . . . The application must be in writing and filed at or before final decree . . . .  If the court finds that the application is made in good faith and is supported by competent evidence showing that default in payment or inability to pay is due to drought, fraud, heat, hail, storm, or other climatic conditions or due to infestation of pests, the court may continue the foreclosure proceedings . . . .

Iowa Code § 654.15(1)(a).

The Braaksmas partially satisfied section 654.15 by admitting in their answer to defaulting on some of the notes and to breaching the terms of the designated instrument.  But they fell short on proving by competent evidence that their default was mainly due to climatic conditions.  At a May 2017 hearing Jesse testified the "very wet, nasty spring" of 2016, which prevented timely planting, was the root of their financial turmoil.  He explained, "The rain just continued. So what we did is we filed a prevented plant claim with our Federal Crop Insurance on approximately 75 percent of our farm."  Jesse claimed the family's inability to plant three-quarters of its cropland led directly to the loan default.  But on cross examination, Jesse acknowledged payments were due on bank notes in the amount of $28,800 in January 2016 and in the amounts of $65,730 and $76,591 in March 2016, before the wet spring would have had an

impact on their ability to satisfy the obligations. The bank agreed to extend the payment dates until the summer of 2016.

In denying the Braaksmas' motion to continue, the district court aptly reasoned

> [T]heir failures to pay in January and March, 2016, or the extended note dates of June and July, 2016, can scarcely be laid at the feet of wet planting conditions for the 2016 crop. Had the wet planting conditions not prevailed, and had their 2016 crop been timely planted, it would not have been available for harvest, sale and application to their notes until the fall harvest season of 2016. Even after allowing for their 45-day cure dates, all their cure dates expired before September, 2016, the earliest date upon which the crop could have been realized.

The court concluded the Braaksmas' default did not result from adverse weather conditions. The statute allows the district court to exercise discretion in determining whether the owners' predicament can be traced to climactic conditions beyond their control. *See Bank of Craig, Craig, Mo v. Hughes*, 398 N.W.2d 216, 2017 (Iowa Ct. App. 1986). The Braaksmas did not produce sufficient evidence to support a finding that their application was made in good faith or they were unable to pay due to conditions outlined in section 654.15. We determine the district court acted within its discretion in declining to impose a foreclosure moratorium under section 654.15.

### C.    Summary Judgment

Most critically, the Braaksmas assert the district court erred in granting the bank's motion for summary judgment in the mortgage foreclosure proceeding. They raise a single contention over the interpretation of a creditor's right to cure a default in a foreclosure action on agricultural land under Iowa Code section 654.2A(1) and (4).

At issue is the following language:

>1. A creditor shall not initiate an action pursuant to this chapter to foreclose on a deed of trust or mortgage on agricultural land, as defined in section 9H.1, until the creditor has complied with this section.
>
>. . . .
>
>4. If the borrower has a right to cure a default:
>
>a. A creditor shall not accelerate the maturity of the unpaid balance of the obligation, demand or otherwise take possession of the land, other than by accepting a voluntary surrender of it, or otherwise attempt to enforce the obligation until forty-five days after a proper notice of right to cure is given. The time period for a request for mediation pursuant to chapter 654A shall run concurrently with the period for the notice to cure under this section.
>
>b. Until the expiration of forty-five days after notice is given, the borrower may cure the default by tendering either the amount of all unpaid installments due at the time of tender, without acceleration, plus a delinquency charge of the scheduled annual interest rate plus five percent per annum for the period between the giving of the notice of right to cure and the tender, or the amount stated in the notice of right to cure, whichever is less, or by tendering any performance necessary to cure a default other than nonpayment of amounts due, which is described in the notice of right to cure.

Iowa Code § 654.2A.

The Braaksmas highlight the last clause of section 654.2A(4)(b), contending they may cure the default by tendering either the amount of all unpaid installments or *any performance necessary* to cure a default other than nonpayment of amounts due.[6]  They focus on the word "performance" and suggest it be given a liberal construction under the remedial provisions of chapter 654.  *See Koch v. Kostichek*, 409 N.W.2d 680, 682 (Iowa 1987).  The Braaksmas contend "any performance" is

---

[6] The Braaksma do not dispute that they were in default or that they received the proper forty-five day notice to cure.

broad enough to encompass their pledge to assign their expected crop insurance payment and the liquidation of "old crop" grain on hand to the bank. They claim by informing the bank of a future payment at a future date they satisfy the performance requirement of section 654.2A(4)(b).

The bank insists the Braaksmas are "misreading" the last phrase and offers an alternative statutory interpretation:

> The Code contemplates two situations, which may or may not both be in play in a given case. One situation is a debtor defaulting by failing to make a payment due, which is the Braaksma situation. Another situation is the debtor defaulting by violating some other agreement with the creditor, e.g. by failing to pay real estate taxes, or failing to insure collateral as required in loan agreements.

The bank contends it is unreasonable to interpret the right-to-cure statute as allowing a debtor to cure a default by the promise of a future payment. We agree with the bank's interpretation. The phrase "any performance necessary" in the last sentence refers to defaults stemming from the borrower's failure to satisfy an obligation to the lender other than nonpayment. *See Koch*, 409 N.W.2d at 683 ("We will not search for the meaning of a statute or apply a strained construction when its language is clear and unambiguous."). The Braaksmas have not shown any legal error in the district court's grant of the bank's motion for summary judgment.

**AFFIRMED.**